# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-CV-60841-STRAUSS

**NIHAL MICHAEL GAUTAM,**

     Plaintiff,

v.

**CITY OF SUNRISE,** *et al.*,

     Defendants.

_____/

### <u>ORDER</u>[1]

    **THIS MATTER** came before the Court upon three separate motions to dismiss: Defendants, Michael West, Anthony Rosa, Christopher Pullease, Sean Visners, Brooke Lebel, Richard White, and Felcia M. Bravo's, Motion to Dismiss [DE 22]; Defendants, Maurice Lawrence, Carlos Lopez, Terrell Bush, Deltamus Cason, and Bradford Jones', Motion to Dismiss [DE 23]; and Defendant, City of Sunrise's, Motion to Dismiss [DE 24] (collectively "the Motions").  I have reviewed the Motions, Plaintiff's Response to each [DE 32, 33, 34] and Defendants' combined Reply [DE 37] thereto, and all other pertinent portions of the record.  For the discussed herein, the Motions [DE 22, 23, 24] are **GRANTED-IN-PART and DENIED-IN-PART.**

---

[1] On June 24, 2025, the parties filed a Joint Notice of Consent where they waived their right to proceed before a United States District Judge of this Court and consented to have me conduct any and all further proceedings in this case, including the trial and order of the entry of judgment.  [DE 28].

## PROCEDURAL BACKGROUND

Plaintiff, Nihal Michael Gautam ("Gautam"), filed his Complaint on April 29, 2025. [DE 1]. He purported to bring a 42 U.S.C. § 1983 civil rights claim, a Florida Public Records Act claim, a RICO claim under 18 U.S.C. § 1961, an abuse of process claim, and an intentional infliction of emotional distress claim. *Id.* at 3.[2] Gautam also moved to proceed *in forma pauperis*. [DE 3]. I entered an order denying without prejudice Gautam's motion to proceed *in forma pauperis*, finding that it contained several deficiencies. [DE 4] at 3. I also found that Gautam's Complaint failed "to adequately allege any specific facts from which the Court could reasonably infer Plaintiff has stated plausible claims or that would give Defendants reasonable notice of what those claims are." *Id.* at 4. I then ordered Gautam to "file a renewed motion to proceed in forma pauperis[] and file an amended complaint by May 23, 2025." *Id.* at 6.

On May 2, 2025, Gautam filed his Amended Complaint and renewed his motion to proceed *in forma pauperis*. [DE 5], [DE 6]. Gautam listed the City of Sunrise, Lieutenant Michael West, Sergeant Christopher Pullease, Officer Rachel Howe, Chief Anthony Rosa, and ten John Doe SERT officers as defendants in his Amended Complaint. [DE 5] at 3. Gautam purported to bring a 42 U.S.C. § 1983 civil rights claim (alleging malicious prosecution, excessive force, and due process violations), a 42 U.S.C. § 1983 *Monell*[3] claim, and a civil Rico claim under 18 U.S.C. § 1961. [DE 5] at 1.

Then, on May 23, 2025, Gautam sought leave to file a Second Amended Complaint and attached the proposed Second Amended Complaint to his motion. [DE 11]. I granted his motion

---

[2] Though Gautam listed five causes of action in his Complaint, his Civil Cover Sheet only checked one box, Racketeer Influenced and Corrupt Organizations. [DE 1–1] at 1.

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

for leave, *see* [DE 12], and granted his renewed motion to proceed *in forma pauperis*, [DE 16]. Gautam's Second Amended Complaint contains 385 paragraphs, spans 29 pages, and lists the City of Sunrise ("City"), Chief Anthony Rosa ("Rosa") (individually and in his official capacity), Lieutenant Michael West ("West"), Sergeant Christopher Pullease ("Pullease"), Officer Maurice Lawrence ("Lawrence"), Officer Carlos Lopez ("Lopez"), Officer Terrell Bush ("Bush"), Officer Deltamus Cason ("Cason"), Sergeant Bradford Jones ("Jones"), Deputy Chief Sean Visners ("Visners"), Major Brooke Lebel ("Lebel"), Sergeant Richard White ("White"), Felicia M. Bravo ("Bravo") (in her official capacity), and ten John Doe officers as defendants. *See* [DE 13].

## **FACTUAL BACKGROUND**[4]

Gautam alleges that at 2:00 AM on March 6, 2025, he went to the residence of his son's mother with his two golden retrievers to "peacefully discuss[] child-related matters." [DE 13] ¶ 13. Then Officers Lawrence, Lopez, Bush, Cason, West, Rachel Howe, and Jones arrived at the scene. *Id.* ¶ 13. Officer Lawrence then handcuffed Gautam and placed him in the back of a patrol car. *Id.* ¶¶ 15–16, 21. Gautam does not provide any allegations as to why Officer Lawrence arrested him but does mention in one paragraph that the officers repeatedly questioned "the alleged victim—[his son's] mother." *Id.* ¶ 14. While detained, Gautam alleges that he told the officers that the handcuffs were too tight, that he could not feel his hands, and that he asked repeatedly where his dogs were. *Id.* ¶¶ 15, 18. The officers allegedly ignored all of Gautam's requests and ridiculed him. *Id.* ¶ 16.

---

[4] For purposes of considering the Motions, the Court accepts the factual allegations in the Second Amended Complaint as true and views them in the light most favorable to Plaintiff. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019).

Gautam alleges that the officers who were present on the night of his arrest tampered with their body-worn cameras by muting their microphones at various points (specifically when some of the officers were conferring with each other). *Id.* ¶¶ 25–43. Moreover, Gautam alleges that certain officers who appeared on the body-worn camera "were omitted from CAD logs, arrest reports, and discovery materials produced to Plaintiff and his defense counsel" (in his underlying criminal case). *Id.* ¶ 26.

As part of his general facts, Gautam makes numerous allegations regarding an incident that took place in November 2021 between Defendant Pullease and another officer, Amanda Mata ("Mata"). *Id.* ¶¶ 51–81. In short, Gautam describes the incident as Pullease attacking Mata and then trying to cover up his attack. *Id.* Gautam alleges that Pullease was allowed to retire while he was under investigation and retain his pension. *Id.* ¶ 66.

Gautam further alleges that between April and May 2025, he submitted a series of public record requests to the City related to his March 6, 2025 arrest and about the officers involved. *Id.* ¶ 83. Bravo primarily handled the City's response to these requests. *Id.* Gautam alleges that the City did not provide the requested documents and falsely claimed that there we "no responsive records" for some of his requests. *Id.* ¶ 86. Furthermore, Gautam alleges that the City charged impermissible fees including a "fabricated 25% fringe/pension benefit surcharge" fee. *Id.* ¶ 91. Lastly, Gautam alleges that the City has "constructed and preserved an entrenched system of pension abuse." *Id.* ¶ 114. Gautam makes serval allegations regarding this alleged abuse involving multiple officers, the Sunrise Police Retirement Board, and several cities statewide including Jacksonville, Miami, West Palm Beach, and Clearwater. *Id.* ¶¶ 114–145, 177–186.

Gautam brings eight counts against the various Defendants. Count I is a false arrest and unlawful seizure claim under 42 U.S.C. § 1983 against "All Defendant Officers and the [City]."

*Id.* ¶¶ 197–98.  Count II is an excessive force claim under 42 U.S.C. § 1983 against "All Defendant Officers and the [City]."  *Id.* ¶¶ 212–13.  Count III is a failure to intervene claim under 42 U.S.C. § 1983 against "All Defendant Officers Individually."  *Id.* ¶¶ 229–30.  Count IV is a *Monell* claim under 42 U.S.C. § 1983 against the City and Chief Anthony Rosa.  *Id.* ¶¶ 245–46.  Count V is a civil RICO claim under 18 U.S.C. §§ 1961–1968 against the City, West, Bravo, Pullease, Rosa, Jones, and John Doe Officers 1–10.  *Id.* ¶¶ 261–62.  Count VI is a violation of the Florida Public Records Act claim under Chapter 119, Florida Statutes against the City and Bravo.  *Id.* ¶¶ 296–97.  Count VII is a negligence and due process claim against the City and "Individual Officers."  *Id.* ¶¶ 316–17.  And Count VIII is an injunctive and declaratory relief claim against all Defendants.  *Id.* ¶¶ 334–335.

## LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face."  *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Shotgun pleadings violate Federal Rule of Civil Procedure 8. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018). There are four types or categories of shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). But the "unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

When a plaintiff is proceeding *pro se*, the Court must liberally construe the *pro se* pleadings and hold them to "less stringent standards" than pleadings drafted by attorneys. *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise

deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

## <u>ANALYSIS</u>[5]

### I.      Count I (False Arrest and Unlawful Seizure Under 42 U.S.C. § 1983)

Gautam brings his false arrest and unlawful seizure claim under 42 U.S.C. § 1983 against "All Defendant Officers and the [City]."  [DE 13] ¶¶ 197–98.  Defendants Lawrence, Lopez, Bush, Cason, and Jones have filed an Answer to this claim and do not join in the Motions for this count. As to the remaining Defendants, they argue that Gautam failed to plausibly allege facts that could establish a false arrest claim.

Defendants Rosa, Pullease, Visners, Lebel, and White argue that Gautam does not allege that they were present at the time of his arrest and could have violated his Fourth Amendment rights.  [DE 22] at 4.[6]  They are correct.

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim."  *Bowens v. Superintendent of Miami S. Beach Police Dep't*, 557 F. App'x 857, 863 (11th Cir. 2014) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004)).  Here, Gautam fails to allege how Defendants Rosa, Pullease, Visners, Lebel, and

---

[5] Although Gautam has alleged extensive general facts, he does not attribute any of his general facts to a specific cause of action.  Thus, it is difficult to ascertain which general facts pertain to which cause of action.

[6] Gautam names the City as a Defendant in this claim.  However, "[t]here is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers in making a false arrest."  *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  "Instead, a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation."  *Id.*  This is commonly referred to as a *Monell* claim. Gautam, in Count IV, brings a *Monell* claim against the City (and Rosa).  Thus, it appears that inclusion of the City in Count I is duplicative of the claim brought in Count IV.  At any rate, in Count I Gautam offers only a single conclusory allegation that the City failed to train and supervise its personnel.  Because these allegations against the City are insufficient to support *Monell* liability for false arrest, Count I against the City is dismissed.

White were involved in his arrest, much less arrested him without probable cause. Gautam alleges that "Officers Lawrence, Bush, Lopez, and others executed the arrest without lawful authority." [DE 13] ¶ 208.[7] But a vague allegation of "and others" does not plausibly state that the above Defendants participated in anyway with Gautam's arrest. Therefore, Count I is dismissed as to Defendants Rosa,[8] Pullease, Visners, Lebel, and White.

Count I is not dismissed as to Defendant West. West's only argument in favor of dismissal (lumped in with the other defendants in DE 22) is that he was not present during the incident, and Gautam did not allege that West was present. [DE 22] at 4. However, Gautam's allegations belie this assertion. For example, Gautam alleges that West "oversaw the arrest while remaining undocumented and unaccountable" and "coordinated the operation and directed the unlawful seizure." [DE 13] ¶¶ 205, 209. Thus, Gautam did allege that West was present during the incident. Because West's only argument in support of dismissal was that there were no allegations that he was present during the arrest, his motion is denied.

## II.     Count II (Excessive Force under 42 U.S.C. § 1983)

Gautam brings his excessive force claim under 42 U.S.C. § 1983 against "All Defendant Officers and the [City]." [DE 13] ¶¶ 212–13. Defendants Lawrence, Lopez, Bush, Cason, and Jones have filed an Answer to this claim and do not join in the Motions for this count. As to the

---

[7] Earlier in his Second Amended Complaint, Gautam alleges that "[a]t approximately 3:00 AM, Plaintiff was handcuffed behind his back by Officer Maurice Lawrence." *Id.* ¶ 15.

[8] Additionally, all other claims against Rosa in his official capacity are dismissed on the grounds that "suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Here, Gautam sues the City and Rosa in his official capacity. Suing Rosa in his official capacity is the equivalent of suing the City. *Id.* Keeping the City and Rosa in his official capacity as a defendant in this case would be "redundant and possibly confusing to the jury." *Id.*

remaining Defendants, they argue that Gautam failed to plausibly allege facts that could establish an excessive force claim.

Gautam alleges that officers used excessive force while arresting him because he was "handcuffed tightly for over 45 minutes," and was not provided water or bathroom access while in the backseat of a patrol vehicle. [DE 13] ¶¶ 216, 218. Defendants West, Rosa, Pullease, Visners, Lebel, and White argue that Gautam fails to allege that each of the Defendants did not use objectively reasonable force. [DE 22] at 4.[9] I agree that Gautam has failed to plausibly allege facts that could establish an excessive force claim against Defendants Rosa, Pullease, Visners, Lebel, and White. I do not agree that Gautam failed to plausibly allege facts that could establish an excessive force claim against West.

When evaluating whether an officer used excessive force, courts "balance the nature and quality of the intrusion on the individual against the government justification for using force and consider (1) the severity of the crime, (2) whether the suspect poses an immediate threat, and (3) whether the suspect is resisting arrest or attempting to evade arrest." *Andrade v. Sheriff of Lee Cnty., Fla.*, No. 23-10438, 2023 WL 6389812, at * 5 (11th Cir. Sept. 29, 2023). Additionally, courts consider "the justification for the use of force, the relationship between the justification and the force used, and the extent of any injury inflicted." *Id.*

Gautam does not allege anywhere in his excessive force claim that Defendants Rosa, Pullease, Visners, Lebel, or White used *any* force, let alone excessive force, on him. Indeed, Gautam does not allege that these Defendants were even present during his arrest. Therefore, Count II is dismissed as to these Defendants.

---

[9] Gautam also names the City as a Defendant in this claim. For the same reasons described as to Count I in footnote 6, *supra*, Count II against the City is dismissed. Again, the claim against the City appears duplicative of the *Monell* claim brought in Count IV, and, at any rate, offers only a conclusory allegation of failure to train officers, failing to supervise, and ignoring excessive force.

As to Defendant West, Gautam alleges that he was present during the arrest and "stood nearby laughing, as seen on [body-worn camera] footage from Lawrence, Bush, and West." [DE 13] ¶ 219.  Gautam further alleges that West "ignored cries for help" and did not loosen his handcuffs.  *Id.* ¶¶ 217, 225.  Again, these allegations sufficiently rebut West's entire argument in support of dismissal that he was not present during the arrest and that Gautam has not alleged that he was.[10]  Thus, West's motion to dismiss Count II is denied.

### III.    Count III (Failure to Intervene under 42 U.S.C. § 1983)

Gautam brings his failure to intervene claim under 42 U.S.C. § 1983 against "All Defendant Officers Individually." [DE 13] ¶¶229–30.  Defendants Lawrence, Lopez, Bush, Cason, and Jones have filed an Answer to this claim and do not join in the Motions for this count.  As to the remaining Defendants, they argue that Gautam failed to plausibly allege any facts that could establish an ability to intervene.

Defendants West, Rosa, Pullease, Visners, Lebel, and White argue that Gautam does not plausibly allege that the officers were in a position to intervene.  After reviewing the allegations, Defendants Rosa, Pullease, Visners, Lebel, and White are correct.

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (quoting *Velazquez v. City of Hialeah*, 484 F.3d

---

[10] The motion on behalf of West and others does cite *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) for the proposition that an excessive force claim requires allegations that each defendant sued used objectively unreasonable force.  To the extent Defendants meant this sentence to specifically support dismissal of West separate and apart from the defendants who were not even alleged to be present, there are several problems.  For one, they do not cite any analysis from *Gonzalez*; rather they only cite to a portion of the opinion recounting what the district court there did that does not examine whether the district court's decision was correct or not.  For another, it is wholly unclear whether or how Defendants meant to apply the principle they state to the allegations against West, given that they do not analyze the allegations against him at all.

1340, 1341 (11th Cir. 2007)).  However, "it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." *Id.* at 1331.

Again, as to Defendants Rosa, Pullease, Visners, Lebel, and White, Gautam does not allege a single fact placing them at the scene of the arrest.  Consequently, Gautam has failed to allege how these Defendants could have intervened if they were not even present during the arrest.  Count III, as to these Defendants, is dismissed.

As to Defendant West, Gautam alleges that he was "present at the scene, within feet of Plaintiff."  [DE 13] ¶ 234.  As explained in Counts I and II, West's entire argument is that Gautam did not allege that West was present during the arrest.  Seeing that Gautam did allege that West was present, and West provides no other grounds for dismissal, West's motion to dismiss Count III is denied.

## IV.    Count IV (Municipal Liability Under 42 U.S.C. § 1983)

Gautam brings his *Monell* claim under 42 U.S.C. § 1983 against the City and Rosa in his official capacity.  [DE 13] ¶¶245–46.  Gautam alleges that the City had a "pattern of misconduct, including the use of ghost officers, unlawful supervision by retirees, routine evidence muting, and paperwork falsification." *Id.* ¶ 249.  Defendants correctly argue that Gautam has failed to plausibly allege facts that could establish a *Monell* claim.

As discussed earlier, Count IV against Rosa in his official capacity is dismissed because "suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent." *Busby*, 931 F.2d at 776.  Therefore, suing Rosa in his official capacity is the equivalent of suing the City. *Id.*  Gautam's *Monell* claim is against both the City and Rosa. And as the court in *Busby* observed, keeping both the municipality and the municipality's officer

(in his official capacity) as a defendants would be "redundant and possibly confusing to the jury." *Id.*

Count IV is also dismissed against the City.[11]  A municipal local government body may be liable under 42 U.S.C. § 1983[12] if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692 (1978)); *Pellegrino v. Wengert*, 703 F. App'x 892, 895 (11th Cir. 2017).  However, municipalities "are not vicariously liable under § 1983 for their employees' actions."  *Connick*, 563 U.S. at 60; *see also Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

"Instead, to impose municipal liability under § 1983, a plaintiff must allege facts showing: '(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'"  *Gurrera v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).  Thus, in addition to demonstrating a violation of constitutional rights, a plaintiff must show "that 'action pursuant to official municipal policy' caused [his] injury."  *Connick*, 563 U.S. at 60 (quoting *Monell*, 436

---

[11] The City puts forth several arguments as to why Count I should be dismissed.  Because the Court agrees that Gautam has failed to allege facts to plausibly state a § 1983 claim, the Court need not address the other grounds for dismissal that the City raises.

[12] 42 U.S.C. § 1983 provides, in pertinent part, the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

U.S. at 691).  Satisfying the causation element requires a showing that the custom or policy at issue was "the 'moving force' behind the constitutional deprivation."  *Gurrera*, 657 F. App'x at 893 (citing *Monell*, 436 U.S. at 690–94).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality," while "[a] custom is a practice that is so settled and permanent that it takes on the force of law."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).  Therefore, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality."  *Craig v. Floyd County*, 643 F.3d 1306, 1311 (11th Cir. 2011).  To establish a "custom," a plaintiff must show a "persistent and wide-spread practice" of similar constitutional violations.  *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Here, Gautam alleges that City officials "were aware of persistent use of retired personnel like [West] in field operations, despite West being publicly listed as retired and serving as Pension Board Chair."  [DE 13] ¶ 250.  Gautam also alleges that "[o]fficers routinely omitted supervisors from arrest paperwork and redacted or altered body camera footage."  *Id.* ¶ 251.  But all these allegations stem from the one night Gautam was arrested.[13]  Gautam does not allege any other examples of retired officers being use in field operations or any other examples of officers omitting

---

[13] Moreover, it is entirely unclear what constitutional right or rights Gautam is alleging that these supposed policies violated.  Gautam fails to provide non-conclusory allegations showing any of these policies or customs are wide-spread, and it is entirely unclear how any of these policies could constitute the "moving force" behind the false arrest and excessive force claims in Counts I and II.  To the extent Gautam is claiming some other kind of constitutional violations, the Second Amended Complaint is entirely unclear as to what other constitutional violation Gautam purports to bring.

supervisors from arrest paperwork.  Again, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom."  *Craig*, 643 F.3d at 1311.

Additionally, Gautam makes several allegations regarding the City's response to Gautam's public record requests.  [DE 13] ¶¶ 254, 259.  In particular, Gautam alleges that, due to the deficiencies in the City's responses, Gautam has proved that the City has "an official policy of denying citizens access to core constitutional evidence."  *Id.* ¶ 254.  These allegations do not plausibly state an official policy or custom.  The alleged policy or custom spans one event (the City's response to Gautam's public records request), and Gautam does not make any allegation that the City provided deficient public record responses to other individuals.  Thus, Count IV is dismissed.

### V.        Count V (Civil RICO Under 18 U.S.C. §§ 1961–68)

Gautam brings his civil RICO claim against the City, West, Bravo, Pullease, Rosa, Jones, and John Doe Officers 1–10.  [DE 13] ¶¶ 261–62.  Gautam alleges these individuals (and municipality) operated an enterprise that "consists of a closed-loop network operated by [the City], Sunrise PD command staff, and pension board actors."  *Id.* ¶ 264.  Together, Gautam alleges, these Defendants: obstructed justice by muting their body-worn camera footage (in violation of 18 U.S.C. § 1503); tampered with a witness regarding an incident with Defendant Pullease (in violation of 18 U.S.C. § 1512); engaged in mail and wire fraud by issuing false denials of his public records requests and demanding inflated fees for those requests (in violation of 18 U.S.C. §§ 1341 and 1343); destroyed Defendant Pullease's internal phone data, failed to maintain body-worn camera chain-of-custody logs, and destroyed or concealed public records (in violation of 18 U.S.C. § 1519); committed fraud in pension administration (in violation of some unspecified "financial institution fraud"); and retaliated against whistleblowers in relation to the incident

between Defendant Pullease and Officer Mata. *Id.* ¶¶ 272–77. Defendants argue that Gautam has not alleged any criminal activity and lacks standing to bring a possibly RICO claim.

Defendants are correct that Gautam's civil RICO claim must be dismissed. "A plaintiff suing under the 'civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff.'" *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1196 (11th Cir. 2025) (quoting *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020)). The statute specifically defines what types of conduct constitutes "racketeering activity," as well as what constitutes an "enterprise" and a "pattern of racketeering activity." 18 U.S.C. § 1961(1), (4), (5). Further, "the test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable." *Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 908 (11th Cir. 1998); *see also Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998) ("In addition to proving racketeering activity, a civil RICO plaintiff must show that the racketeering activity caused him to suffer an injury."); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003) ("In order for a pattern of racketeering activity to be a cognizable cause of civil RICO injury to a private plaintiff, one or more of the predicate acts must not only be the 'but for' cause of the injury, but the proximate cause as well.").

First, regarding many of the alleged predicate acts of racketeering activity, Gautam has not plausibly alleged facts that could establish that these acts caused his alleged injuries. Gautam's allegations about the incident between Defendant Pullease and Officer Mata and its aftermath (which Gautam alleges constitute witness tampering, documents destruction through deletion of

phone data, and retaliation against whistleblowers) are entirely about acts and events that have nothing to do with his arrest and have no discernable connection to his injuries.  Similarly, his allegations regarding fraud in the pension system have no bearing on him or his injuries.  Gautam does not allege how he has suffered any harm from the City's retirement program.  Gautam is not a police officer or an employee qualified to participate in the retirement program.  And whatever systemic effects Gautam believes operation of the pension system had on what officers were or were not present on the night of his arrest, none the alleged wrongs could be considered the proximate cause of his injuries.  *See Green Leaf Nursery*, 341 F.3d at 1307 (defining proximate cause to be "a substantial factor in the sequence of responsible causation").

Second, the alleged predicate acts that bear some connection to Plaintiff's arrest (and his subsequent attempts to obtain information about his arrest) do not constitute "racketeering activity."  Gautam cites to various federal obstruction of justice statutes regarding what he describes as suppression of body-worn camera evidence, "muting of key conversations," and ghost officer cover-ups (18 U.S.C. § 1503), witness tampering (18 U.S.C. § 1512), and destruction of public records and failure to maintain body-worn camera chain-of-custody logs (18 U.S.C. § 1519).  While the statue's definition of "racketeering activity" includes conduct that violates §§ 1503 and 1512, it does not include violations of § 1519.  *See* 18 U.S.C. § 1961(1).  Regardless, all of these statutes apply only to conduct obstructing federal proceedings and investigations.  *Green Leaf Nursery*, 341 F.3d at 1307 ("The federal obstruction and witness intimidation claims [referring to § 1503 and § 1512] are only applicable to federal proceedings.") (citing *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 1990)); *see also* 18 U.S.C. § 1519 (referring to destroying records "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter *within the jurisdiction of any department or agency of the*

*United States*") (emphasis added).  Gautam makes no allegations suggesting any sort of federal nexus with his arrest and subsequent state prosecution.  Therefore, even assuming any of the conduct Gautam alleges regarding the use of body-worn cameras, retention of that footage, or concealment or destruction of other documents relevant to his arrest occurred and are improper,[14] they do not constitute "racketeering activity" within the RICO statute's definition.

Gautam's allegations regarding responses to his public records requests also do not amount to violations of the federal mail or wire fraud statutes, and thus do not constitute racketeering activity.  Gautam alleges that Defendant Bravo responded to his public records requests by falsely claiming that no responsive records existed.  [DE 13] ¶ 280.  However, even if Bravo's statements were knowingly false (and even if she used interstate wires or mails to make them), they do not constitute violations of 18 U.S.C. §§ 1341 or 1343.  That is because these statutes only criminalize deceptions that aim to obtain money or property.  *Ciminelli v. United States*, 598 U.S. 306, 312 (2023).  Bravo's alleged false statements about the existence of records – even if injurious and wrongful in some other way – did not harm or seek to harm Gautam's property rights.  Therefore, they cannot amount to mail or wire fraud and do not amount to a crime within the definition of racketeering activity.

Nor do Gautam's allegations about the City charging him "fabricated" public record request fees amount to mail or wire fraud.  While these charges do amount to attempts to obtain money from him, they were clearly authorized by state law, and thus not fraudulent.  Section

---

[14] *But c.f. United States v. Scott*, No. CR 120-028, 2021 WL 5411955, at *6 (S.D. Ga. July 13, 2021), *report and recommendation adopted*, 2021 WL 5410899 (S.D. Ga. Nov. 18, 2021) ("[T]he failure of an officer to turn on a body camera or dash camera is not sanctionable and does not justify suppression of evidence, even when the failure to do so violates department policy."); *see also Kern v. Sacramento Police Dep't*, No. 223CV00560JDPPC, 2023 WL 3077107, at *2 (E.D. Cal. Apr. 25, 2023) ("[A]n officer does not violate the constitution by having his body worn camera off.").

119.07, Florida Statutes, states that "[t]he custodian of public records shall furnish a copy or a certified copy of the record upon payment of the fee prescribed by law." § 119.07(4), Fla. Stat. (2025). The statute further provides that:

> If the nature or volume of public records requested to be inspected or copied pursuant to this subsection is such as to require extensive use of information technology resources or extensive clerical or supervisory assistance by personnel of the agency involved, or both, the agency may charge, in addition to the actual cost of duplication, a special service charge, which shall be reasonable and shall be based on the cost incurred for such extensive use of information technology resources or the labor cost of the personnel providing the service that is actually incurred by the agency or attributable to the agency for the clerical and supervisory assistance required, or both.

§ 119.07(4)(d), Fla. Stat. The City's municipal code specifically promulgates that:

> City personnel providing clerical or supervisory assistance or information technology resources necessary to comply with the public records request shall maintain records of the time expended and tasks conducted regarding each such request, and the actual city cost of information technology resource use, in responding to the public records request. A debit based upon the city's actual cost of information technology resources and the time expended and the applicable hourly rate shall be charged against the public records request deposit account. The hourly rate used to calculate the special service charge shall be equal to a city employee's actual hourly rate of pay (if such person is paid by the hour) or an approximation of his or her hourly compensation based upon a weekly salary divided by forty (40) hours (if said employee is a person who is compensated on a salaried basis) **together with an additional factor of twenty-five (25) percent reflecting said person's hourly value of fringe and pension benefits**.

Sunrise, Fla., Code § 2-398(b) (emphasis added).

Here, Gautam's allegation that the City (and Bravo) "inflated [public record request] fees using a fabricated 25% pension surcharge" is belied by the ordinance. [DE 13] ¶ 280. The 25% surcharge is not fabricated. Section 119.07(4) permits municipalities to charge a reasonable "special service charge." § 119.07(4)(d), Fla. Stat. And the City's Code details that it will charge an additional 25% charge reflecting the employee's "fringe and pension benefits." Sunrise, Fla., Code § 2-398(b). Florida courts have held that such a fee charge is reasonable. *See Bd. of Cnty.*

*Comm'rs of Highlands Cnty. v. Colby*, 976 So. 2d 31, 37 (Fla. 2d DCA 2008) (approving the county's "formula that includes both an employee's salary and his or her benefits when calculating the labor cost to be included in the special service charge authorized by that statute."); *see also Trout v. Bucher*, 205 So. 3d 876, 877–79 (Fla. 4th DCA 2016); *Charnley v. Town of S. Palm Beach*, No. 13-81203-CIV, 2015 WL 12999749, at *9 (S.D. Fla. Mar. 23, 2015), *report and recommendation adopted*, 2015 WL 12999750 (S.D. Fla. Apr. 9, 2015). Consequently, Gautam has failed to allege that mandating this fee surcharge constitutes fraud (and, thus, "racketeering activity").

Because some of the alleged predicate acts did not cause Gautam's injuries and the other acts are not racketeering activities, Count V is dismissed as to all Defendants.

## VI.     Count VII (Negligence and Due Process Violations)

Gautam brings what appears to be a combined negligence and due process violation claim against the City and "Individual Officers." [DE 13] ¶¶ 316–17. Gautam makes several allegations in this claim spanning different issues. For example, Gautam alleges that while being arrested, he was never informed of the charges against him, never issued *Miranda* warnings, had personal property taken, and officers did not ensure the safety of his one-year-old son. *Id.* ¶¶ 320–25. The named Defendants argue that this claim should be dismissed for several reasons, including that it is an improper shotgun pleading and Gautam has failed to allege a negligence or due process claim.

The Defendants are correct that this claim is a shotgun pleading, as it appears to mix two different causes of action (one based on the Fourteenth Amendment and, presumably, § 1983, and one based on common law negligence). Failure to separate different causes of action into different counts creates a shotgun pleading. *Weiland*, 792 F.3d at 1322–23 ("The third type of shotgun

pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.").  This deficiency alone warrants the dismissal of Count VII.

Even if Gautam's Negligence and Due Process claims were pled separately, Gautam has failed to plausibly allege facts that could establish either claim.

### a.   Defendants West, Rosa, Pullease, Visners, Lebel, and White

Gautam alleges that officers did not make any effort to ensure the safety of Plaintiff's one-year-old son who remained sleeping inside his mother's house while Gautam was arrested.  [DE 13] ¶ 324.  Gautam also alleges several deficiencies with the manner he was arrested and subsequently held.  ¶¶ 320–21.  Gautam does not allege that Defendants Rosa, Pullease, Visners, Lebel, and White, were present during the arrest.  Therefore, based on Gautam's allegations, these Defendants did not engage in any negligent conduct regarding Gautam's son, nor violate his due process rights regarding his arrest and detainment because, again, Gautam has not even alleged that they were present during the arrest.  Therefore, Count VII is dismissed as to Defendants Rosa, Pullease, Visners, Lebel, and White.

Further, to the extent Gautam brings a common law negligence claim, Defendants Rosa, Pullease, Visners, Lebel, and White, as well as Defendant West, are immune under Florida law.

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

§ 768.28(9)(a), Fla. Stat. (2025).  Gautam does not allege that any of the Defendants "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  At best, Gautam has merely alleged simple negligence.  Indeed, he

fails to respond to Defendants' state-law immunity argument at all.  Therefore, this count fails to the extent it brings a claim based on negligence.

Insofar as Gautam seeks to state a § 1983 claim for violation of due process, his claim also fails.  As to Gautam's allegation that he was not provided with *Miranda* warnings, failure to follow *Miranda* procedures "does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created."  *Jones v. Cannon*, 174 F.3d 1271, 1291 (11th Cir. 1999); *see also Newman v. Garcia*, No. 3:16-CV-137-J-PDB, 2016 WL 8939133, at *6 (M.D. Fla. Sept. 26, 2016) ("Failure to give a *Miranda* warning establishes no cause of action for money damages under § 1983.").

Moreover, Gautam alleges that his business property, pets, and phone were taken "without documentation or chain-of-custody receipts."  [DE 13] ¶ 323.  Gautam appears to be attempting to allege a claim for seizure of his property, but such a claim is properly under the Fourth Amendment not the Fourteenth.  *See Alcocer v. Mills*, 906 F.3d 944, 952–53 (11th Cir. 2018).  Regarding Gautam's allegation about a lack of documentation, he fails to explain or provide any authority supporting why such a failure amounts to a constitutional violation of due process.

Lastly, to the extent Gautam's due process claim stems from his allegations that he was arrested without probable cause and subject to excessive force, this claim falls within Gautam's earlier causes of action (Counts I and II).  *See Alcocer*, at 954–55.

### b.  The City

Gautam alleges that the City "failed to train its officers in basic custodial procedures, failed to implement safeguards for property handling, and failed to protect family stability in domestic response scenarios."  [DE 13] ¶ 326.  Gautam further alleges that the City "negligently designed,

trained, and supervised personnel in a manner that foreseeable resulted in the loss of property." *Id.* ¶ 329.

Gautam's allegations are vague and conclusory and do not adequately describe the training deficiency. Additionally, Gautam appears to base his claim on the City's allegedly inadequate training policies. "A city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001). Because Gautam seems to be challenging the reasonableness of the City's basic policy decisions, "the 'discretionary' function exception to the waiver of sovereign immunity applies" and bars Gautam's claim to the extent it is based on state tort law. *Id.* To the extent Gautam is attempting to bring a *Monell* claim under § 1983, he has not alleged non-conclusory facts that would establish a policy or custom of failing to train. Instead, Gautam conclusively alleges that the City "negligently designed, trained, and supervised personnel in a manner that foreseeably resulted in the loss of property, harm to family integrity, and violation of procedural due process." [DE 13] ¶ 329. Therefore, Count VII is dismissed as against the City.

### c. Defendants Lawrence, Lopez, Bush, Cason, and Jones

Defendants Lawrence, Lopez, Bush, Cason, and Jones move to dismiss Count VII on several grounds. They argue they are immune from Gautam's negligence claim pursuant to section 768.28(9)(a), Florida Statutes. Defendants further contend that Gautam's purported due process claim falls within his previous counts (Counts I and II).

Gautam fails to allege that Defendants Lawrence, Lopez, Bush, Cason, and Jones "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Again, Gautam has at best merely alleged simple negligence.

As to the failure to provide *Miranda* warnings, there is no cause of action for money damages under § 1983. *See Jones*, 174 F.3d at 1291. Finally, any alleged due process claim for lack of probable cause or use of excessive force falls within Counts I and II. Consequently, Count VII against Defendants Lawrence, Lopez, Bush, Cason, and Jones is dismissed.

## VII.    Count VIII (Injunctive and Declaratory Relief)

Gautam's eighth cause of action seeks declaratory relief under 28 U.S.C. §§ 2201–2202 against all Defendants. Gautam realleges several facts he already alleged earlier in his Second Amended Complaint. For example, Gautam alleges that he was falsely arrested without probable cause, that the body-worn camera footage from the night of the arrest was suppressed, that "ghost officers" supervised the arresting officers, that there is whistleblower suppression, and the pension program is abused. [DE 13] ¶¶ 338–45. Defendants correctly argue that Gautam has not stated a basis for any of the Defendants to be subjected to declaratory relief and that Gautam has not alleged facts that would entitle him to injunctive relief.

"The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant.'" *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). "[A] court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are already before the court." *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346 (S.D. Fla. 2012); *see also Dear v. Q Club Hotel, LLC*, No. 15-60474-CIV, 2015 WL 4273054, at *2 (S.D. Fla. July 14, 2015). Here, Gautam's basis for declaratory relief is identical to the facts alleged in his earlier counts. For example, his allegations regarding probable cause are identical to Count I, his allegations regarding "ghost officers" are identical to Count IV, and allegations about whistleblower and evidence suppression are identical

to Count V.  In other words, all the issues Gautam raises in Count VIII, are already raised in his other counts.

As to injunctive relief, there is no cause of an action for injunctive relief.  An injunction is an equitable remedy, not a separate cause of action.  *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("There is no such thing as a suit for a traditional injunction in the abstract."); *see also Exum v. Nat'l Tire & Battery*, 437 F. Supp. 3d 1141, 1158–59 (S.D. Fla. 2020); *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018), *report and recommendation adopted*, 2018 WL 3730867 (S.D. Fla. June 27, 2018).  Regardless, Gautam has failed to plead any facts showing that he can satisfy the elements required to obtain injunctive relief, including facts suggesting that he faces a "serious risk of continuing irreparable injury" in the future.  *See Thomas v. Bryant*, 614 F.3d 1288, 1318 (11th Cir. 2010).  Consequently, Count VIII is dismissed.

## VIII.   Count VI (Violation of Florida Public Records Act Under Chapter 119, Florida Statutes)

Lastly, Gautam alleges that the City and Bravo violated the Florida Public Records Act. [DE 13] ¶¶ 296–97.  Gautam claims that he submitted several public records requests from April to May 2025 and the City and Bravo responded with "[f]alse denials," "[d]eliberate delay tactics," and "[f]abricated cost demands."  *Id.* ¶¶ 301–04.  In response, the City and Bravo argue that the Court should decline jurisdiction over Gautam's Public Records Act claim.

The Court declines to exercise jurisdiction over Gautam's state-law claim.  Gautam only brings this cause of action against the City and Bravo.  As discussed above, all the other claims against the City and Bravo are due to be dismissed.  Thus, the only remaining claim against these two Defendants is Gautam's Public Records Act claim (a state-law claim).  "The decision to

exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Id.* Therefore, Count VI is dismissed.

## CONCLUSION

For the reasons discussed above, the Motions [DE 22, 23, 24] are **GRANTED-IN-PART and DENIED-IN-PART**.

a.  Counts I, II, and III are **dismissed with prejudice** as to all Defendants except Defendants West, Lawrence, Lopez, Bush, Cason, and Jones.[15]

b.  Count V is **dismissed with prejudice**.[16]

c.  Counts IV, VII, and VIII are **dismissed without prejudice**.[17]

d.  Count VI is **dismissed without prejudice**, as the Court declines to exercise supplemental jurisdiction over this claim.

---

[15] "Our cases make clear that 'a [pro se] plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice'—at least, that is, where 'a more carefully drafted complaint might state a claim.'" *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (quoting *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018)) (alteration in original). Here, the Court has provided Gautam with three opportunities to sufficiently plead a viable claim against these Defendants for Counts I–III, but he has failed to do so. Additionally, given that Gautam has not even alleged that Defendants Rosa, Pullease, Visners, Lebel, and White were present during his arrest, there is nothing to suggest that it would be possible for a more carefully drafted complaint to state a claim. Thus, dismissal with prejudice is appropriate.

[16] As with Counts I–III, Gautam has had three opportunities to sufficiently plead his RICO claim. However, he has failed to do so. Moreover, based on the allegations in the Second Amended Complaint and Gautam's responses to the Motions, there is nothing to suggest that it would be possible for a more carefully drafted complaint to state a claim. Thus, dismissal with prejudice is appropriate.

[17] These Counts are dismissed without prejudice because a more carefully drafted complaint *might* state a claim. However, Gautam is warned that failure to state a claim in a possible Third Amended Complaint may result in dismissal of these claims **with prejudice**.

    e.  The Court will afford Gautam one final opportunity to amend his complaint regarding

those claims that have been dismissed without prejudice.  Gautam may file a Third

Amended Complaint by **September 4, 2025.**

      **DONE AND ORDERED** in Fort Lauderdale, Florida this 21st day of August 2025.

**Jared M. Strauss**
**United States Magistrate Judge**

26