**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-60841-STRAUSS**

**NIHAL MICHAEL GAUTAM,**

     Plaintiff,

v.

**CITY OF SUNRISE** et al.**,**

     Defendants.

_____/

## ORDER GRANTING DEFENDANT CITY OF SUNRISE'S MOTION TO DISMISS

**THIS MATTER** came before the Court upon Defendant City of Sunrise's Motion to Dismiss Third Amended Complaint [DE 48] (the "Motion"). I have reviewed the Motion, Plaintiff's Response [DE 50], Defendant's Reply [DE 51], and all other pertinent portions of the record. For the reasons discussed below, the Motion [DE 48] is **GRANTED**.

## PROCEDURAL BACKGROUND

Plaintiff filed his initial Complaint on April 29, 2025. [DE 1]. He purported to bring a civil rights claim under 42 U.S.C. § 1983, a claim under the Florida Public Records Act, a RICO claim under 18 U.S.C. § 1961, an abuse of process claim, and an intentional infliction of emotional distress claim. *Id.* at 3. Plaintiff also moved to proceed *in forma pauperis*. [DE 3]. I entered an order denying without prejudice Plaintiff's motion to proceed *in forma pauperis*, finding that it contained several deficiencies. [DE 4] at 3. I also found that Plaintiff's Complaint failed "to adequately allege any specific facts from which the Court could reasonably infer Plaintiff has stated plausible claims or that would give Defendants reasonable notice of what those claims are."

*Id.* at 4.  I then ordered Plaintiff to "file a renewed motion to proceed *in forma pauperis*[] and file an amended complaint by May 23, 2025."  *Id.* at 6 (emphasis removed).

On May 2, 2025, Plaintiff filed his Amended Complaint and renewed his motion to proceed *in forma pauperis*.  [DE 5]; [DE 6].  Plaintiff purported to bring a civil rights claim under § 1983 (alleging malicious prosecution, excessive force, and due process violations), a *Monell*[1] claim under § 1983, and a civil RICO claim under § 1961.  [DE 5] at 1.  Then, on May 23, 2025, Plaintiff sought leave to file a Second Amended Complaint and attached the proposed Second Amended Complaint to his motion.  [DE 11].  I granted his motion for leave, [DE 12], and granted his renewed motion to proceed *in forma pauperis*, [DE 16].

The Second Amended Complaint alleged eight counts against various combinations of the City of Sunrise (the "City"), the City's police officers, and one of the City's employees who responded to Plaintiff's information requests.  *See* [DE 13].  These counts included (1) claims for false arrest and unlawful seizure, excessive force, and failure to intervene (all under § 1983), (2) a *Monell* claim under § 1983 against the City and its police chief, (3) a civil RICO claim, (4) a claim for an alleged violation of the Florida Public Records Act, (5) a claim alleging negligence and a violation of due process, and (6) a claim for injunctive and declaratory relief.   [DE 13] at 17-27.  In response to three motions to dismiss filed by the various defendants, the Court dismissed the false arrest, excessive force, and failure to intervene claims against some individual defendants but allowed it to proceed against others.  [DE 40] at 25-26.  The Court dismissed without prejudice the *Monell* claim against the police chief and the City, explaining that Plaintiff had failed to sufficiently allege a policy or custom that was the moving force behind the alleged constitutional

---

[1] *See generally Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

violations. *Id.* at 11-14.  The Court also dismissed the RICO claim with prejudice. *Id.* at 25.  The Court also dismissed the negligence, Florida Public Records Act, and declaratory and injunctive relief claims without prejudice. *Id.*  The Court then allowed Plaintiff "one final opportunity to amend his complaint" regarding the claims that had been dismissed without prejudice. *Id.* at 26.

On August 29, 2025, Plaintiff filed his Third Amended Complaint ("TAC").  [DE 45]. The TAC re-alleges the claims for false arrest and unlawful seizure (Count I), excessive force (Count II), and failure to intervene (Count III) against all the individual officers that were not dismissed by the Court's prior order. *Id.* at 13-15.  The TAC also alleges a *Monell* count against the City (Count IV), claiming that the City's police department "operated under a pattern of misconduct[.]" *Id.* ¶ 142, at 16.  Finally, in Count V, the TAC seeks injunctive and declarative relief against the City and the individual officers "in their official capacities." *Id.* at 17.  The City now seeks to dismiss Count IV, arguing that Plaintiff has failed to sufficiently allege a policy or custom amounting to constitutional violations, much less one that was the moving force behind the constitutional violations alleged here.  [DE 48] at 2-8.  It also seeks to dismiss Count V, arguing that Plaintiff has failed to allege an "immediate threat of future injury" necessary to obtain injunctive relief. *Id.* at 8-9.

## FACTUAL BACKGROUND[2]

At approximately 2:20 a.m. on March 6, 2025, Plaintiff was leaving his son's mother's residence following a verbal dispute.  [DE 45] ¶ 15.  He was unarmed, calm, and accompanied by his two golden retrievers. *Id.*  Officers Maurice Lawrence, Carlos Lopez, Terrell Bush, Sgt. Deltamus Cason, Lt. Michael West, Rachel Howe, and Sgt. Bradford Jones then arrived at the

---

[2] For purposes of considering the Motion, the Court accepts the factual allegations in the TAC as true and views them in the light most favorable to Plaintiff.  *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019).

scene.  *Id.*  At approximately 3:00 a.m., Officer Lawrence handcuffed Plaintiff and placed him in the back of a patrol car.  *Id.* ¶¶ 17-18.  Plaintiff does not provide any allegations as to why Officer Lawrence arrested him but does mention in one paragraph that the officers repeatedly entered and exited the residence and questioned "the alleged victim."  *Id.* ¶ 16.  Plaintiff immediately complained that the handcuffs were painfully tight, asking officers to loosen them and protesting that he could not feel his hands.  *Id.* ¶ 17.   The officers ignored Plaintiff's requests for water, a bathroom, and the loosening of the cuffs, ridiculing him instead.  *Id.* ¶ 18.

At approximately 3:03 a.m., Officer Lopez asked Officer Bush why Plaintiff had been arrested.  *Id.* ¶ 26.  Officer Bush answered, "She said he bit her."  *Id.*  Officer Lopez then asked, "Can you even see a mark?"  Officer Bush responded, "Ehh, it's a little red."  *Id.*  "That's some weak PC," Officer Lopez said.  *Id.*  Plaintiff was later charged with "battery."  *Id.* ¶ 22.  However, the charges were dismissed on May 22, 2025.  *Id.* ¶¶ 23, 28.

Plaintiff also alleges a series of actions and circumstances that he describes as "consistent with a deliberate strategy to suppress exculpatory evidence."  *Id.* ¶ 21.  Plaintiff alleges that various officers who were present on the night of his arrest tampered with their body-worn cameras ("BWCs") by muting their microphones at various points (specifically when some of the officers were conferring with each other).  *Id.* ¶¶ 20-21.  This muting included Officers Bush and Lopez turning off their BWCs following the above-described discussion; Officer Bush tapped Officer Lopez's BWC and stated, "TAC debrief."  *Id.* ¶ 26.  Moreover, Plaintiff alleges that arrest paperwork "omitted any mention of supervising personnel such as West, Cason, or Jones" and that "Jones and Cason were omitted" from criminal discovery materials "despite appearing on CAD logs and body camera evidence."  *Id.* ¶¶ 22-23.  Similarly, after obtaining BWC footage following a motion to compel in his criminal case, Plaintiff found discrepancies between CAD records and

4

video sequences. *Id.* ¶¶ 23-25. Furthermore, the BWC-recorded statement from the alleged battery victim did not allege biting. *Id.* ¶ 23.[3] Overall, Plaintiff alleges that the City "tolerated suppression of evidence and shielded abusive supervisors rather than correcting misconduct," and that these actions collectively "prejudiced Plaintiff's defense by denying him the ability to confront supervisory decisionmakers such as Jones and Cason, violating his Sixth and Fourteenth Amendment rights." *Id.* ¶ 30.

Plaintiff further alleges that the "misconduct Plaintiff endured" was "part of a longstanding, documented pattern of unlawful practices, concealment, and failure to discipline within the Sunrise Police Department." *Id.* ¶ 31 (emphasis removed). In apparent support of showing this alleged pattern, Plaintiff makes allegations regarding several prior incidents and situations. First, he describes an incident in November 2021 where Sunrise Police Sergeant Christopher Pullease assaulted fellow officer Amanda Mata when she intervened against Pullease pepper-spraying a handcuffed suspect. *Id.* ¶¶ 32-33. Following the assault, Pullease ordered officers on scene to turn off their body-worn cameras. *Id.* ¶ 34. Pullease had been a supervisor for over two decades and had been cleared of at least two prior Internal Affairs complaints. *Id.* ¶ 35. A few months after the assault, the "Sunrise PD's chief publicly called the video of Pullease 'disgusting.'" *Id.* Prosecutors later charged Pullease with "battery on a law enforcement officer, assault on the suspect, and evidence tampering." *Id.* ¶ 36 (emphasis removed).

Second, Plaintiff describes a 2014 U.S. Department of Justice ("DOJ") audit that found "Sunrise" had mishandled more than $300,000 in asset forfeiture funds and found that the City's

---

[3] In an apparent effort to further show a practice of misconduct, Plaintiff also alleges that officers seized his two dogs without documenting the seizure with receipts or chain-of-custody paperwork and that Plaintiff's one-year-old son remained inside during Plaintiff's arrest "without support or comfort." *Id.* ¶ 27.

police department had weak internal controls, oversight, and accountability in handling forfeiture funds.  *Id.* ¶¶ 38-40.  Plaintiff then alleges that media coverage had reported that "Sunrise PD's forfeiture stings disproportionately targeted Black and Latino out-of-state drivers."  *Id.* ¶ 41 (emphasis removed).  Plaintiff alleges that Lt. West was "publicly associated with these forfeiture operations" and was promoted despite the DOJ's findings.  *Id.* ¶ 42.

Plaintiff then describes a laundry list of various disparate incidents.  He alleges that, in 2005, "Sunrise PD's SWAT team" shot and killed Anthony Diotaiuto while raiding his home.  *Id.* ¶¶ 44-45.  Plaintiff alleges that there were discrepancies about the police department's positions on whether Diotaiuto had pointed a gun at officers and whether officers announced themselves before entering.  *Id.* ¶¶ 46-48.  A federal lawsuit brought by Diotaiuto was dismissed on grounds of qualified immunity.  *Id.* ¶ 49.

In 2019, 16-year-old Damain Martin drowned in a canal after the City's police officers chased and tased him near the water.  *Id.* ¶¶ 51-53.  According to Plaintiff, Internal Affairs for the City's police department later concluded that officers were correct not to enter the water to help Martin, and a lawsuit for failure to train officers was dismissed at summary judgment.  *Id.* ¶¶ 54-57.

Plaintiff next alleges an incident in July 2020, where a 22-year-old woman was attacked by five people.  *Id.* ¶ 58.  Despite a cell phone video and the victim naming the assailants, Plaintiff alleges that the City's police department "took no action, later claiming 'insufficient evidence.'"  *Id.* ¶¶ 59-60.  Plaintiff alleges that a lawsuit was filed but does not allege its outcome.  *Id.* ¶ 62.

Plaintiff then alleges that in 2023, after a sergeant reported that an Internal Affairs commander removed an antique from a crime scene, the sergeant was arrested on "allegations of

'written threats'" and fired, while the commander was not disciplined and received "verbal counseling" only.  *Id.* ¶¶ 64-67 (emphasis removed).

Last, Plaintiff alleges that in 2014, when the American Civil Liberties Union ("ACLU") requested records on "Stingray cell-site simulator devices," the City's police department refused to confirm whether such records existed, which was inconsistent with the City's prior posting of documents online that confirmed "Stingray use."  *Id.* ¶¶ 70, 72.  According to Plaintiff, looking at these incidents collectively,[4] they "establish a pattern and practice of unconstitutional conduct."  *Id.* ¶ 78 (emphasis removed).

## LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face."  *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).  "Where a

---

[4] Plaintiff includes allegations detailing the death of his friend, Kevin Desir, while he was in Broward County's custody.  *See, e.g.*, *id.* ¶¶ 82-83.  It does not appear that Plaintiff is trying to attribute this incident to the City but rather describing what he believes to be a general, systemic pattern in Broward County at large.

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019).  But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

When a plaintiff is proceeding *pro se*, the Court must liberally construe the *pro se* pleadings and hold them to "less stringent standards" than pleadings drafted by attorneys.  *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).  "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014).

## ANALYSIS

### I.      Count IV (Municipal Liability Under 42 U.S.C. § 1983)

Plaintiff brings a *Monell* claim under § 1983 against the City.  [DE 45] ¶¶ 141-146.  According to Plaintiff, "Sunrise PD operated under a pattern of misconduct . . . ." *Id.* ¶ 142.  This

8

pattern of misconduct allegedly included (1) using "ghosts officers" that were not listed in paperwork, (2) deploying "off-roster or out-of-assignment personnel (including West) in active command roles," (3) routinely muting BWCs to suppress incriminating conversations, (3) falsifying or not completing arrest affidavits, (4) retaliating against whistleblowers, and (5) manipulating "Pension/DROP" to reward silence and shield abusers. *Id.* The City argues that dismissal is appropriate because the prior incidents that Plaintiff tries to rely on to establish a custom and policy of the City "are simply too remote and dissimilar to support a *Monell* custom and policy theory." [DE 48] at 5. Although Defendant frames the conduct at issue too narrowly, such as by focusing solely on Plaintiff's arrest and the use of force against Plaintiff, the Court generally agrees. The alleged prior incidents do not raise the plausible inference of a custom so widespread that the City's deliberate indifference was the moving force behind any of the alleged constitutional violations. Therefore, Count IV is due to be dismissed.

A municipal local government body may be liable under § 1983[5] if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978)); *Pellegrino v. Wengert*, 703 F. App'x 892, 895 (11th Cir. 2017). However, municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60; *see also Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely*

---

[5] 42 U.S.C. § 1983 provides, in pertinent part, the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

"Instead, to impose municipal liability under § 1983, a plaintiff must allege facts showing: '(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Gurrera v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).  Thus, in addition to demonstrating a violation of constitutional rights, a plaintiff must show "that 'action pursuant to official municipal policy' caused [his] injury." *Connick*, 563 U.S. at 60 (quoting *Monell*, 436 U.S. at 691).  Satisfying the causation element requires a showing that the custom or policy at issue was "the 'moving force' behind the constitutional deprivation." *Gurrera*, 657 F. App'x at 893 (citing *Monell*, 436 U.S. at 690-94).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality," while "[a] custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).  In other words, a custom is "a longstanding and widespread practice [that] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991).  Accordingly, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd County*, 643 F.3d 1306, 1311 (11th Cir. 2011).  A plaintiff must usually provide a "persistent and wide-spread practice" of similar constitutional violations to show a custom existed. *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir.

10

1986).  Random acts or isolated incidents are normally insufficient.  *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) (quoting *Depew*, 787 F.2d at 1499).

To establish a custom by referencing prior incidents, the prior incidents must be "substantially similar" to the facts of the case at hand.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (affirming district court's order granting summary judgment in favor of municipality because plaintiff could not show any prior cases involving excessive force were "substantially similar to the case at hand"); *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) ("Prior incidents also must involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim."); *see Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998) ("Gold presented no evidence of a single prior incident in which a City police officer caused an injury by excessive force in handcuffing."); *Guzman v. City of Hialeah*, No. 15-CV-23985, 2017 WL 4324632, at *1 (S.D. Fla. Sept. 29, 2017) ("The incidents cited by Plaintiff are too remote and dissimilar to plausibly establish that the City maintained a wide-spread practice or custom of allowing its police officers to engage in excessive force, which is what is required to state a valid *Monell* claim." (citation omitted)); *Casado v. Miami-Dade County*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018).  Other courts have explained that "the prior examples of wrongdoing must violate the *same constitutional rights* [as the plaintiff's] and violate them *in the same way*." *Franklin v. Franklin County*, 115 F.4th 461, 472 (6th Cir. 2024) (alteration in original) (emphasis added) (quoting *Berry v. Del. Cnty. Sheriff's Off.*, 796 F. App'x 857, 863 (6th Cir. 2019)); *cf. Teel v. Lozada*, No. 18-14367-CV, 2021 WL 12253902, at *4 (S.D. Fla. June 24, 2021) ("Plaintiffs pursuing [failure-to-supervise-or-train] claims are typically required to point to specific factually similar instances which could be said to have given defendants notice of a need to supervise or train in a particular area.").

Two cases from this district help illustrate the boundary line for what constitutes substantial similarity.  In one case, this Court concluded that the plaintiffs had sufficiently pled a "custom" in the form of a school board's failure to train officers on the appropriate use of handcuffs during Baker Act situations because the complaint described, among other things, "six specific instances in which handcuffs were used to restrain a child during transport for involuntary examination." *D.P. v. Sch. Bd. of Palm Beach Cnty.*, 658 F. Supp. 3d 1187, 1227-28 (S.D. Fla. 2023).  The complaint also contained allegations that an investigation by internal affairs resulted in recommendations for increased training to address this scenario, but the school board did not act on these recommendations.  *Id.*  By contrast, this Court in *Shehada* reasoned that the plaintiffs failed to establish municipal liability for a department's failure to investigate and discipline misconduct in part because "many of the alleged incidents [of excessive force] bear little to no factual similarity to the instant case. Few involved the use of firearms, and not all even occurred in the course of an investigatory stop or emergency response."  965 F. Supp. 2d at 1375.

Here, Plaintiff has not plausibly alleged a *Monell* claim against the City.  For starters, the TAC does not clearly allege what *specific* constitutional rights of his Plaintiff believes the City violated, nor what constitutional right each of the instances of prior misconduct he cites violated.  But "[a] constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed."  *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (citing *Albright v. Oliver*, 510 U.S. 266, 270 (1994))).  Plaintiff gestures vaguely at the Fourth, Sixth, and Fourteenth Amendments throughout the TAC, occasionally using more specific references like the right to due process and the right to be free from unreasonable searches and seizures.  *See* [DE 45] ¶¶ 22, 30, 117.  But none of that is sufficient to put the Defendant (or the Court) on notice of the basis of Plaintiff's *Monell* claim.

12

Whatever constitutional violation Plaintiff is alleging, Plaintiff does not allege that the City maintains a formal policy that was the moving force behind the alleged constitutional violations, and all the prior incidents that Plaintiff relies on to show the existence of a custom are too remote, dissimilar, and unrelated to satisfy Plaintiff's burden, even at the pleading stage.  Plaintiff points to a wide variety of prior incidents to allege that there is "an ongoing pattern of abuse and concealment by the City of Sunrise and its police command structure."  [DE 45] ¶ 2.  But Plaintiff alleges a custom at far too high a level of generality.  In doing so, he functionally seeks to hold the City liable in this case because the City, in his view, does not do enough in general to discipline disparate forms of bad behavior in the police department.  *See, e.g.*, *id.* ¶ 78 ("Collectively, these incidents . . . establish a pattern and practice of unconstitutional conduct" (emphasis removed)).  However, Plaintiff cannot plausibly allege a *Monell* claim against the City by providing a laundry list of events that do not relate to the events of this case or even to each other.

To the extent that Plaintiff is attempting to allege a custom that was the moving force behind Plaintiff's allegedly unconstitutional arrest and the subsequent excessive use of force, Plaintiff's allegations are insufficient.  Plaintiff does not allege *any* incident that comes close to mirroring the facts of his case, which is an arrest without probable cause following a domestic violence dispute and excessive force based on overly tight handcuffs.  Indeed, none of the prior incidents alleged in the TAC are "substantially similar" such that they involve the violation of the same constitutional right in the same way.  *See Mercado*, 407 F.3d at 1162; *Franklin*, 115 F.4th at 472.  The dearth of similar incidents here is in stark contrast to cases like *D.P.*, where the plaintiffs stated a plausible *Monell* claim by alleging (among other things) six prior incidents that were nearly identical to what each plaintiff experienced, i.e., the use of handcuffs to restrain a child during transport for involuntary psychiatric examination.  658 F. Supp. 3d at 1204, 1219, 1227-

13

28.  As the City points out here, all the prior incidents in the TAC contain little—much less substantial—factual similarity to Plaintiff's arrest.  *See* [DE 48] at 5.  And none of the prior incidents involve excessive force in handcuffing.  *Cf. Gold*, 151 F.3d at 1351 ("Gold presented no evidence of a single prior incident in which a City police officer caused an injury by excessive force in handcuffing.").  For the alleged prior incidents in which officers did use some type of force on a suspect, such as the shooting of Diotaiuto during a raid of his home and the tasing of Martin near a canal, these incidents plainly fail to raise a plausible inference of any custom or deliberate indifference by the City in a particular respect such that this indifference was the moving force behind a violation of one of Plaintiff's constitutional rights.[6]  These incidents involved different types of force (i.e., gun and taser, not handcuffs) under very different circumstances (i.e., home raid and foot pursuit, not response to domestic disturbance).

To the extent that Plaintiff is attempting to allege a constitutional violation based on other purported misconduct surrounding his arrest and prosecution (beyond the arrest itself and the use of handcuffs), the result is identical for the other alleged misconduct Plaintiff references in the TAC.  *See* [DE 45] ¶ 142.  For instance, Plaintiff alleges that the City's police department operated under a pattern of misconduct by using "ghost officers" that were present on scene but not listed in any documentation.  *Id.*  But none of the prior incidents alleged in the TAC contain "ghost officers" or anything resembling the omission of supervisors from reports.  Plaintiff likewise does not allege any prior incidents that involved "[d]eployment of off-roster or out-of-assignment

---

[6] Moreover, as Plaintiff concedes, these other incidents do not even show a prior *constitutional* violation because the cases filed in connection with them were dismissed.  [DE 45] ¶¶ 49, 57. There mere filing of an action shows nothing.  *Cf. Casado*, 340 F. Supp. 3d at 1328 ("In his response to the County's motion to dismiss, the plaintiff cites a number of court actions filed against the County to show that a pattern exists. This is not sufficient." (relying on *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987))).

personnel . . . in active command roles," "[f]alsified or incomplete arrest affidavits," or "[p]ension/DROP manipulation." *Id.* Without allegations of prior incidents that are substantially similar to what Plaintiff experienced, Plaintiff cannot state a claim under *Monell.* Again, the things Plaintiff himself experienced do not suffice because "[a] single incident of a constitutional violation is insufficient to prove a policy or custom." *Craig*, 643 F.3d at 1311; *accord Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017) ("[I]t is also well-established that Perry must do more than simply rely upon his own experience to invoke *Monell* liability.").

Two other types of misconduct Plaintiff points to include muting of BWCs and retaliation against whistleblowers. *See* [DE 45] ¶ 142. For BWC muting, the only other supposed prior occurrence is the Pullease incident, where a police sergeant committed battery on another police officer (not a suspect) and ordered other officers on scene to turn off their BWCs. *Id.* ¶¶ 32-37. Yet this incident did not involve anything resembling the use of some "code" between officers to signal to each other that they need to turn off BWCs before engaging in improper conversations, which is what Plaintiff alleges happened to him. And even if the Court credited Plaintiff's broad-brush comparison, the two incidents would still not be enough to plausibly allege a custom somehow attributable to the City because the occurrences would be random acts or isolated incidents rather than a persistent and wide-spread practice. *See Church*, 30 F.3d at 1345. Further, Plaintiff's allegations regarding "[r]etaliation against whistleblowers" fail because Plaintiff does not adequately connect these the prior incidents to any violations of his own constitutional rights.[7]

---

[7] To the extent that Plaintiff seeks to allege a custom of based on a failure to discipline particular officers, such as Lt. West, Plaintiff has also failed to plausibly allege that the type of misconduct any officer engaged in in the past was similar in kind or degree to what happened to Plaintiff such that the failure to discipline could be the moving force behind what happened to Plaintiff. *Cf. Teel*, 2021 WL 12253902, at *4 ("Plaintiff does not meaningfully attempt to demonstrate that the type of 'rule-breaking' Lozada committed in the past was in any way similar in kind or degree to the lapses in judgment that culminated in Lozada's tragic use of deadly force against Mrs. Teel."). It

Still, Plaintiff insists on viewing all the prior incidents collectively. *See, e.g.*, [DE 45] ¶ 78 ("Collectively, these incidents . . . establish a pattern and practice of unconstitutional conduct." (emphasis removed)). In his Response, Plaintiff argues that all the prior incidents included in the TAC demonstrate a "deliberate suppression of accountability mechanisms." [DE 50] at 2. Plaintiff further argues that he satisfies the similarity requirement because "[t]he relevant similarity is the policy-level practice of evidence suppression and retaliatory cover-up . . . ." *Id.* (emphasis removed). However, Plaintiff's approach is far too broad. For one, he again fails to connect a lack of "accountability mechanisms" to the violation of any particular constitutional right, much less a violation that he himself suffered. For another, Plaintiff's approach would enable any plaintiff to state a claim against a municipality under *Monell* by stringing together a slew of unrelated occurrences with vague comparisons under the broad theory that those events put the municipality "on clear notice of systemic problems." [DE 45] ¶ 79. This approach is wholly inconsistent with the high burden traditionally imposed on plaintiffs trying to pursue these types of *Monell* claims. *See, e.g.*, *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."); *see also Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient *in a particular respect*, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." (emphasis added)). Instead, Plaintiff's approach would functionally devolve into vicarious liability in all but the rarest circumstances; something courts have roundly rejected. *See Connick*,

---

is not enough for Plaintiff to allege that Lt. West was "public associated" with unrelated forfeiture operations ten years prior. [DE 45] ¶ 42.

563 U.S. at 60 (stating local governments are only responsible for their own illegal acts and are not vicariously liable for employees' actions).

In short, Plaintiff has provided no allegations to raise a plausible inference that the City itself engaged in illegal acts such that it should be liable under *Monell*.  Count IV will be dismissed.

## II.      Count V (Injunctive and Declaratory Relief)

Defendant moves to dismiss this count on the basis that Plaintiff has not adequately alleged an immediate threat of future injury by the City, so his claim for injunctive relief against it fails. [DE 48] at 8-9.  Plaintiff responds that this count is adequately pled or, at the very least, the Court should give him another chance to amend his claim.[8]  [DE 50] at 3.  Count V should be dismissed.[9]

As this Court has already explained to Plaintiff, there is no standalone cause of action for injunctive relief because it is instead an equitable remedy.  *See* [DE 40] at 24; *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("There is no such thing as a suit for a traditional injunction in the abstract.").

Additionally, Plaintiff has not plausibly alleged that he has standing to pursue injunctive relief against the City.  "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed

---

[8] The Court declines to give Plaintiff an attempt at a fourth amended complaint.  As this Court previously stated, "The Court will afford Gautam one final opportunity to amend his complaint regarding those claims that have been dismissed without prejudice." [DE 40] at 26; *see also id.* at 25 n.17 ("Gautam is warned that failure to state a claim in a possible Third Amended Complaint may result in dismissal of these claims **with prejudice**.").

[9] Count V is brought against the City and the individual defendants "in their official capacities." [DE 45] at 17.  "A § 1983 action 'against a governmental official in his *official capacity* is deemed a suit against the entity that he represents.'"  *Ludaway v. City of Jacksonville*, 245 F. App'x 949, 951 (11th Cir. 2007) (quoting *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999)). Therefore, Count V is brought against the City.  *See id.* ("Because Ludaway has named the Officers as defendants in their official capacities, his complaint against the Officers is essentially a complaint against the City.").

to a merely conjectural or hypothetical—threat of *future* injury." *Church*, 30 F.3d at1337 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)).  In *Lyons*, the plaintiff sought an injunction preventing police from using chokeholds after he was stopped for a traffic violation and placed in an illegal chokehold that rendered him unconscious.  461 U.S. at 97-99.  In holding that the plaintiff lacked standing to pursue an injunction, the U.S. Supreme Court explained: "That Lyons may have been illegally choked by the police on October 6, 1976, . . . does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part."  *Id.* at 105.  Instead, to establish standing to seek the injunction, the plaintiff would have needed to either allege that all police officers in the city always choke the citizens they encounter or that the city ordered, authorized, or permitted its officers to act that way.  *Id.* at 105-06.  With no realistic threat of future injury, the plaintiff did not have standing to seek injunctive relief.  *Id.* at 111.

Here, no alleged facts raise the inference that Plaintiff suffers a realistic threat of future injury beyond his conclusory allegations that the constitutional violations are "ongoing," which does not satisfy the plausibility standard.  *See Twombly*, 550 U.S. at 555.  Nothing in the TAC suggests Plaintiff faces a real and immediate risk of any of the conduct that Plaintiff has attempted to attribute to the City.

Count V also should be dismissed to the extent it seeks declaratory relief against Defendants.  The declaratory relief Plaintiff seeks—a declaration that Defendants violated his constitutional rights and § 1983—is already raised in the TAC.  The Court already explained this notion to Plaintiff.  *See* [DE 40] at 23-24 (stating Plaintiff's basis for declaratory relief is "identical" to facts alleged in earlier counts); *see also Perret v. Wyndham Vacation Resorts, Inc.*,

889 F. Supp. 2d 1333, 1346 (S.D. Fla. 2012) ("[A] court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are already before the court."); *Dear v. Q Club Hotel, LLC*, No. 15-60474-CIV, 2015 WL 4273054, at *2 (S.D. Fla. July 14, 2015) ("Where a party has properly raised an issue in other counts of its pleadings, district courts exercising their discretion will reject claims for declaratory relief addressing that same issue."). Count IV against the City already addresses the same issues raised by Plaintiff regarding a violation of constitutional rights by the City under § 1983. And Counts I-III address claims for constitutional violations under § 1983 against the individual defendants. Therefore, Count V will be dismissed.

**CONCLUSION**

For the reasons discussed above, the Motion [DE 48] is **GRANTED**. Counts IV and V are **DISMISSED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of March 2026.

Jared M. Strauss
United States Magistrate Judge