UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:25-cv-60841-JMS

NIHAL MICHAEL GAUTAM,

      Plaintiff,

v.

CITY OF SUNRISE, FLORIDA, et al.,

      Defendants.

_____/

FILED BY____ABM____D.C.

Apr 7, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

**PLAINTIFF'S MOTION FOR SANCTIONS UNDER RULES 26(g) AND 37(a)(5)**

**AND MOTION TO COMPEL PRODUCTION OF SOURCE-RECORD CATEGORIES**

## INTRODUCTION

Plaintiff, Nihal Michael Gautam, moves this Court for sanctions under Federal Rules of Civil Procedure 26(g) and 37(a)(5) and for an order compelling production of discrete source-record categories that Defendants have refused to produce despite the City's own 30(b)(6) designee confirming their existence under oath.

This motion is not about a single oversight. It concerns a documented pattern of false or incomplete discovery certifications, contradictions between sworn written responses and subsequent testimony, and a refusal to engage in good-faith conferral regarding production

deficiencies—culminating in defense counsel's characterization of Plaintiff's source-record requests as "a colossal waste of time" in a March 26, 2026 email.

Plaintiff seeks: (1) an order compelling production of the specific categories identified below; (2) an award of Plaintiff's reasonable expenses, including costs incurred in preparing this motion, under Rule 37(a)(5)(A); and (3) appropriate sanctions under Rule 26(g)(3) for certifications that were not substantially justified.

## CONFERRAL STATEMENT

Plaintiff has conferred extensively and in good faith. The conferral record includes:

**February 24, 2026:** Plaintiff sent a supplemental identification request with representative still images and video clips to defense counsel and the City's Risk Manager, requesting identification of an unresolved uniformed officer visible on six camera angles. No substantive response was received. (Exhibit C to Plaintiff's Notice of Filing, DE __.)

**March 18, 2026:** Plaintiff sent a written conferral request seeking supplementation on officer identification, source-record categories, the Howe deposition, and a limited discovery extension. (Exhibit C.)

**March 19, 2026:** Defense counsel responded in writing that "[t]here's nothing to supplement," that the unresolved officer "appears to be female, Howe," and that a limited extension had "[n]o chance." The parties conferred by telephone later that day. Plaintiff memorialized defense counsel's positions in a detailed written email the same day. No corrective response was received. (Exhibit C.)

**March 25, 2026 (3:17 PM):** Plaintiff sent a detailed conferral email requesting an itemized, category-by-category confirmation of Defendants' production position on nine specific

source-record categories, citing specific Axon audit-trail findings from the March 5, 2026 production and the March 13, 2026 30(b)(6) deposition testimony. (Exhibit 1 hereto.)

**March 25, 2026 (3:58 PM):** Plaintiff sent a supplemental conferral email to defense counsel and the City's Risk Manager, detailing specific audit-trail entries—including Lawrence's 2:56 AM and 3:14 AM Evidence.com logins, the 6:49 AM Axon Community Request for "AUDIO," the 8:51 AM upload of "New Recording 3.m4a," and Bush's 2125 retention-date entries—and requesting itemized production confirmations with an expanded list of categories. Plaintiff set a March 26, 2026 noon deadline. (Exhibit 1.)

**March 26, 2026 (5:21 AM):** Defense counsel responded that "it is my understanding that the City has produced everything in its custody, control and possession regarding this call," but stated in the same email that he had "forwarded your email to the City's Risk Manager and Sergeant Eric Goldstein" to "obtain formal authorization from the City to advise that nothing else can or will be provided." Defense counsel further stated that the requested categories were "not relevant or proportional" and that "[n]one of these items sought will make any difference." (Exhibit 1.)

**March 26, 2026 (5:25 AM):** Four minutes later, defense counsel sent a second email stating: "These inquiries are better left to deposition questioning. This entire line of discovery is a colossal waste of time." (Exhibit 1.)

**March 26, 2026 (5:49 AM):** Plaintiff responded, noting the internal contradiction in defense counsel's position—simultaneously certifying completeness while acknowledging that formal authorization had not yet been obtained—and requesting a four-option itemized response for each category: (1) already produced with Bates identification; (2) exists but will not be

produced with basis; (3) does not exist after reasonable inquiry; or (4) not within Defendants' possession, custody, or control. Plaintiff set a noon deadline. (Exhibit 1.)

Defense counsel did not provide the requested itemized confirmation by the March 26, 2026 noon deadline.

## FACTUAL BACKGROUND

### A. The November 3, 2025 Metadata Denial

On November 3, 2025, Defendants served verified interrogatory responses signed by Risk Manager Bill Mason. In response to Plaintiff's Interrogatory No. 3, which sought information regarding body-worn camera recording stoppages, Defendants stated: "Defendant does not maintain logs of any stoppages of recording."

On March 13, 2026, the City's Rule 30(b)(6) designee, Sergeant Eric Goldstein, testified under oath that the Axon/Evidence.com system maintains metadata including activation and deactivation logs, hash values, upload logs, export logs, and access-tracking information. Goldstein further confirmed that "TAC debrief" is an official City policy that permits officers to deactivate their body-worn cameras for private discussions.

The November 3, 2025 certification that "Defendant does not maintain logs of any stoppages of recording" was directly contradicted by the City's own designee. Defense counsel signed that certification under Rule 26(g).

### B. The Lopez Employment False Certification

In the same November 3, 2025 verified responses, Defendants certified: "All others remain employed." Defense counsel later acknowledged that Officer Lopez had separated from the

department. The certification was false or, at minimum, was not the product of a reasonable inquiry at the time it was signed.

## C. The Huggard Presence Contradiction

Both the October 30, 2025 and November 3, 2025 interrogatory responses listed Officer Huggard as physically present on scene. Huggard subsequently testified under oath that he was not present at the scene. On February 16, 2026, defense counsel's own letter stated that Huggard "was dispatched initially, but did not arrive on scene." No corrected verified supplementation was served.

## D. The Aja/Cason Approval Chain Revision

The October 30, 2025 interrogatory response to Interrogatory No. 6 stated: "The report was approved by Sgt. Aja." Four days later, the November 3, 2025 response stated: "Sergeant Cason approved of the decision to arrest Plaintiff." The answer changed both the identity of the approving person and the nature of the thing approved—from report approval to arrest-decision approval—without explanation, without formal supplementation under Rule 26(e), and without any indication of which individual officers reviewed or approved which version. Both answer sets were verified by Risk Manager Mason, not by the individual officer defendants.

## E. The March 5, 2026 Audit Production and Unresolved Gaps

On March 5, 2026, Defendants produced selected Axon "User Audit Trail" reports. That production confirmed the existence of system-level audit capabilities while simultaneously revealing significant gaps:

**Lawrence logins:** The Lawrence audit trail reflects manual Evidence.com logins at 2:56:36 AM and 3:14:04 AM during the active incident. No object-level records were produced showing what Lawrence accessed, viewed, or created during those sessions.

**Lawrence citizen audio request:** At 6:49:31 AM, Lawrence created an Axon Community Request for Incident ID 422503013074, described as "AUDIO." At 8:51:18 AM, a file identified as "New Recording 3.m4a" was uploaded through that portal, tagged "AXONCitizen." That audio file has not been produced.

**Bush retention anomaly:** Bush's audit trail reflects arrest-photo records for Incident 42-2503-013074 assigned retention dates in the year 2125—one hundred years—while other evidence in the same session received standard 2033-range retention dates. No explanation has been provided.

**Howe omission:** No user-audit report was produced for Officer Howe, despite Howe's body-worn camera being the earliest continuous recording and Howe being the officer who made initial contact with Plaintiff at approximately 2:22 AM.

**West thin footprint:** The West audit trail reflects only three BWC entries and no logins or evidence-access activity, despite West's role as the commanding officer on scene.

## F. The Goldstein 30(b)(6) Deposition

On March 13, 2026, the City produced Sergeant Goldstein as its Rule 30(b)(6) designee on body-worn camera topics. Goldstein testified that he: (a) did not review any BWC footage to prepare; (b) did not review any metadata, CAD records, or RMS records; (c) brought no documents; (d) spoke only to Risk Manager Bill Mason to prepare; (e) did not know what Rule 30(b)(6) is; and (f) was sent a Zoom link by email rather than being formally noticed.

Despite this lack of preparation, Goldstein made several critical admissions: the Axon system maintains activation/deactivation logs, hash values, upload and export logs, and access-tracking metadata; CAD is a Broward County–administered Motorola P1 system, not maintained by Sunrise PD; RMS is a CentralSquare system administered by Janice Ubi; and the TAC debrief is an official City policy permitting officers to deactivate body-worn cameras.

The City's designee thus confirmed the existence of the very records that the November 3 interrogatory responses denied and that defense counsel now calls "a colossal waste of time."

## LEGAL STANDARD

### A. Rule 37(a)(5): Expenses on Motion to Compel

Under Rule 37(a)(5)(A), if a motion to compel is granted, the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The award is mandatory unless the opposing party's position was substantially justified or other circumstances make an award unjust.

### B. Rule 26(g): Certification Sanctions

Under Rule 26(g)(3), "[i]f a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." The sanction "must" be imposed; the rule uses mandatory language. The certification obligation extends to discovery responses and objections and requires that they are "consistent with these rules," "not interposed for any improper purpose," and "neither unreasonable nor unduly burdensome or expensive."

## ARGUMENT

## I. RULE 26(g) SANCTIONS ARE MANDATORY FOR THE FALSE CERTIFICATIONS

Defense counsel signed the November 3, 2025 interrogatory responses certifying that "Defendant does not maintain logs of any stoppages of recording." The City's own 30(b)(6) designee contradicted that statement under oath three and a half months later. The system does maintain such logs. That certification was either false when made or was made without reasonable inquiry. Either way, it was not substantially justified, and sanctions are mandatory under Rule 26(g)(3).

The same analysis applies to the Lopez employment certification. "All others remain employed" was false. Defense counsel later acknowledged Lopez had separated. A reasonable inquiry before certifying that answer would have revealed the truth.

The Huggard presence certification compounds the pattern. Two separate verified answer sets listed Huggard as on scene. Huggard himself testified he was never there. Defense counsel's own February 16, 2026 letter confirmed it. Yet no corrected verified supplement was ever served. The original certification remained uncorrected on the record for months.

The Aja/Cason revision is distinct but equally problematic. The identity of the person who approved the arrest—and what that person approved—changed between October 30 and November 3, 2025 without explanation, without formal supplementation, and without disclosure of which individual defendants reviewed or approved which version. Both versions were verified by Risk Manager Mason, raising the separate question of whether a non-party Risk Manager can provide Rule 33(b)(5) verification on behalf of individual officer defendants who may have had personal knowledge of the correct answer.

Taken individually, any one of these certifications would warrant sanctions. Taken together, they establish a pattern of certifications made without the reasonable inquiry required by Rule 26(g)(1).

## II. RULE 37(a)(5) FEES ARE REQUIRED BECAUSE DEFENDANTS FORCED THIS MOTION

Plaintiff conferred in writing on February 24, March 18, March 19, March 25, and March 26, 2026. Plaintiff identified each disputed category with specificity. Plaintiff provided a four-option response framework for each category. Plaintiff set a reasonable deadline. Defendants did not provide the requested itemized confirmation.

Instead, defense counsel characterized the entire line of inquiry as "a colossal waste of time," asserted without analysis that the categories were "not relevant or proportional," and simultaneously claimed that "everything" had been produced while acknowledging that he had not yet received formal authorization from the City to make that representation. Defense counsel did not provide a category-by-category response. Defense counsel did not identify Bates numbers or file names for any previously produced category. Defense counsel did not state a clear basis for withholding any specific category.

This is not a close case on conferral. Plaintiff made repeated, specific, good-faith efforts to resolve these issues without motion practice. Defendants' response was dismissive, internally contradictory, and failed to engage with the substance of any individual category. That is exactly the kind of conduct Rule 37(a)(5)(A) is designed to address.

## III. THE REQUESTED CATEGORIES ARE RELEVANT AND PROPORTIONAL

Defendants' blanket relevance objection fails. Plaintiff's claims arise under the Fourth and Fourteenth Amendments and allege that the arrest lacked probable cause and that the post-arrest

documentation was fabricated or assembled after the fact. The requested source-record categories go directly to:

**Timing and integrity:** Native metadata, hash values, and activation/deactivation logs establish when BWC evidence was created, accessed, and modified. In a case where the incident report was created at 6:42 AM, the arrest occurred at approximately 2:22 AM, and the officer listed as arresting officer did not perform the initial detention, timing is a central issue.

**Chain of custody:** Evidence-level audit trails showing who accessed, exported, shared, and modified BWC evidence go directly to the integrity of the record Defendants rely on to justify the arrest.

**Completeness:** The absence of a Howe audit trail, the unproduced citizen audio file, and the unexplained Lawrence Evidence.com sessions during the arrest window all raise questions about whether the production is complete.

**Credibility of written responses:** Where Defendants' sworn interrogatory answers denied the existence of system logs that the 30(b)(6) designee later confirmed exist, the underlying source records are the only way to test the accuracy of the discovery record.

Defense counsel's assertion that "[n]one of these items sought will make any difference when it comes to proving or disproving your claims" is unsupported and, in light of the 30(b)(6) testimony, untenable. The City's own designee confirmed the records exist. The audit trail production confirmed the system generates them. The only remaining question is why Defendants refuse to produce them.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court enter an order:

**1.** Compelling Defendants to produce, within fourteen (14) days, the following source-record categories for Incident No. L4225030600013074 and all linked evidence:

a. Native BWC/source-file metadata, including hash values and integrity/authentication data;

b. Complete Axon evidence-level audit/history records, including access, export, share, preserve, modification, and chain-of-custody information;

c. Activation/deactivation logs and associated device/event logs;

d. All Axon user-audit reports for Officer Rachel Howe and any other relevant user not included in the March 5 production;

e. The file identified as "New Recording 3.m4a" and all Axon Community Request records for Incident 422503013074;

f. CAD audit/source records for Incident No. L4225030600013074;

g. RMS creation/modification/workflow logs and associated audit history;

h. AVL/GPS/location records for responding units;

i. Radio/dispatch logs, audio, and related source records;

**2.** Imposing sanctions under Rule 26(g)(3) for Defendants' certifications that (a) the City does not maintain logs of recording stoppages; (b) all officers remain employed; and (c) Officer Huggard was physically present at the scene;

**3.** Requiring Defendants to serve corrected, verified supplemental responses to Interrogatory Nos. 2, 3, 6, and 7 within fourteen (14) days, signed by the individual officer defendants with personal knowledge rather than solely by Risk Manager Mason;

**4.** Awarding Plaintiff his reasonable expenses incurred in making this motion, including filing costs, deposition transcript costs, postage, printing, and travel, under Rule 37(a)(5)(A); and

**5.** Granting such other relief as the Court deems just and appropriate.

Dated: March 26, 2026

*Respectfully submitted,*

/s/ Nihal Michael Gautam

**NIHAL MICHAEL GAUTAM**

Plaintiff, Pro Se

840 SW 6th Street

Hallandale, FL 33009

954-489-8883

nihalg5555@gmail.com

## CERTIFICATE OF SERVICE

I certify that on March 26, 2026, a true and correct copy of the foregoing was served on counsel of record by U.S. Mail and by email at Alexander@JAMBG.COM.

/s/ Nihal Michael Gautam

NIHAL MICHAEL GAUTAM

United States District Court
Southern District of Florida
Fort Lauderdale Division

Re: **Gautam v. City of Sunrise, et al.**
Case No. **0:25-cv-60841-JMS**

Dear Clerk:

I am the pro se Plaintiff in the above-captioned action. Please accept and docket the enclosed filings in this case.

The enclosed documents are as follows:

1. Plaintiff's Motion for Sanctions and to Compel;
2. Plaintiff's Opposition to Defendants' Motion for Summary Judgment;
3. Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Local Rule 56.1;
4. Plaintiff's Declaration in Opposition to Summary Judgment; and
5. Plaintiff's Motion for Leave to Supplement Municipal-Liability Allegations.

Thank you for your assistance.

Respectfully submitted,

/s/ Nihal Michael Gautam
**Nihal Michael Gautam**
Plaintiff, pro se

**CERTIFIED MAIL** ™

FIRST-CLASS MAIL
U.S. POSTAGE AND
**FEES PAID**
LETTERSTREAM

$008.02

03/30/2026   ZIP
0436822303054



**USPS CERTIFIED MAIL**

9207 1901 4298 0472 0436 99

## CERTIFIED MAIL

Nihal Gautam
840 SW 6th St
Hallandale Beach FL 33009-6817



0013678687000011
Clerk of Court
299 E Broward Blvd
ste 108
FORT LAUDERDALE FL 33301
USA